IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROY C. BALDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 09 C 3778 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| AVIS RENT A CAR SYSTEMS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Roy Baldon's second amended complaint alleges claims of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. Before the Court is defendant's motion for summary judgment. For the reasons stated below, the motion is granted.

**I.      Factual Background**

Unless otherwise noted, the following facts are undisputed. Defendant is a car rental business. In August 2003, defendant hired plaintiff as a part-time shuttle driver at defendant's rental location at O'Hare Airport in Chicago. As a shuttle driver, plaintiff was responsible for moving defendant's rental vehicles between the O'Hare facility and defendant's other rental locations. Plaintiff's direct supervisor was Fleet Distribution Manager Mary Lafata, who in turn reported to City Manager Bill Rogers.

When plaintiff was hired, he signed a document titled "Some Examples of Behaviors that are Unacceptable at Work," acknowledging that he had read and understood it. In that document, defendant lists "some examples of serious behaviors that are contrary to [defendant's] Values and which may result in immediate termination of employment." The listed behaviors include theft

from defendant; unauthorized use of company tools, equipment or property; and dishonesty.

**A.      Plaintiff's December 3, 2003 Complaint**

On December 1, 2003, plaintiff joined a crew of shuttle drivers to move a number of cars. When plaintiff sat in the front seat of the van the crew was to use, another shuttle driver, Charles Bailey, told plaintiff that he had been sitting in that seat, and asked plaintiff to move.  Bailey, who, like plaintiff, is African-American, then told plaintiff to "get your ass out of my seat before I kick your black ass," and called plaintiff a "black motherfucker."  Plaintiff immediately reported the incident to his supervisor, Mary Lafata.

Lafata called Bailey and the lead driver of the shuttle van into her office for a meeting with plaintiff.  During the meeting, Lafata told plaintiff that he knew Bailey had been sitting in the seat, instructed plaintiff to apologize to Bailey, and directed him to find out where the other drivers were sitting before getting in the van in the future.

On December 3, 2003, plaintiff called defendant's confidential employee complaint hotline.  During this call, plaintiff reported, among other things, that Bailey had "addressed him with a profane, racial comment" and "called him a 'black mother f–cker'."  Plaintiff complained that it was unfair that Lafata had blamed plaintiff for the incident.

**B.      December 10, 2003 Incident**

On December 10, 2003, at 2:34 p.m., defendant's O'Hare Distribution Dispatcher, Harold Luchtman, assigned plaintiff to take a silver Chevrolet Impala from the O'Hare facility to defendant's rental location in Highland Park, Illinois.  On the same day and at approximately the same time, Luchtman assigned two other shuttle drivers to take two other cars from O'Hare to Highland Park.

Defendant's shuttle drivers generally are expected to complete their assignments without stopping. Under defendant's policies and procedures, if a shuttle driver on an assigned route needs to stop to use the bathroom, get coffee, or eat lunch, the driver is expected to get permission from his distributor or manager to do so.[1]

At approximately 3:05 p.m., an off-duty lead shuttle driver, Tim Giffin, was near the Gene & Jude's hot dog stand, which is approximately five miles from O'Hare Airport in the opposite direction from Highland Park. According to a written statement Giffin prepared later, Giffin saw an Avis shuttler getting into a silver Avis Impala at the hot dog stand at that location. Giffin called defendant's O'Hare facility and told dispatch clerk Angel Reyes that he had observed an Avis shuttle driver in the Gene & Jude's parking lot. Luchtman then called Giffin back and asked "if he was sure it was Roy & an Avis car"; Giffin responded "yes."

Luchtman then called Becky Clark, the agency operator at defendant's Highland Park facility, and asked her if the shuttle drivers had delivered the three cars to Highland Park. According to Clark, the other two drivers had arrived at 3:15 p.m., but plaintiff had not yet arrived.[2] Luchtman asked Clark to inspect plaintiff's car for food when he arrived.

Plaintiff arrived at the Highland Park facility approximately half an hour after the other

---

[1] Although plaintiff denies defendant's statements of fact relating to this paragraph, he offers no citation to the record in support of his denials. Accordingly, these statements are deemed admitted. See LR 56.1(b)(3); Metro. Life Ins. Co. v. Johnson, 297 F.3d 558, 562 (7th Cir. 2002).

[2] Although plaintiff claims that there is no evidence in the record concretely documenting the drivers' arrival times, defendant offers Clark's December 16, 2003 written statement in support of this fact. Plaintiff offers no evidence to dispute this statement of fact, and therefore it is deemed admitted.

two drivers.[3]  According to Clark, plaintiff and the car smelled like hot dogs, and there were food

wrappers in the car.  According to Luchtman's December 13, 2003 written statement, Avis rental

sales agent Ashwani Kashwap also told him that plaintiff's car smelled like food; however, Clark

does not recall Kashwap being at the Highland Park facility that day.

After he delivered the car to Highland Park, plaintiff returned to the O'Hare facility.

Luchtman called plaintiff into his office, told him that someone had seen him at Gene & Jude's,

and asked him whether he had stopped there.  Plaintiff told Luchtman that he had not stopped.

### C.    Plaintiff's Suspension

On December 11, 2003, Lafata and human resources representative Cheryl Reinwald met

with plaintiff.  At that meeting, plaintiff drafted and signed a written statement denying that he

had stopped at Gene & Jude's the previous day.  Lafata and/or Reinwald then suspended

plaintiff, pending an investigation. As part of the investigation, statements were obtained from

various individuals, including plaintiff, Luchtman, Clark, Giffin, and Reyes.  These statements

were provided to Lafata, who provided "information" to City Manager Bill Rogers.[4]

### D.    Plaintiff's Termination

On January 6, 2004, plaintiff met with Lafata and Rogers.  During this meeting, plaintiff

admitted that he had stopped at Gene & Jude's on December 10, 2003, although plaintiff

maintains that he only made his admission because Rogers intimidated and harassed him.

Plaintiff also drafted a written statement admitting that he had made the stop.  Plaintiff was then

---

[3]  Plaintiff disputes defendant's statement of fact as to his arrival time, but fails to provide a citation to the record in support of this denial.  The statement is deemed admitted.

[4] Plaintiff fails to support his denial of defendant's statement of fact that the witness statements were provided to Lafata; accordingly, the statement is deemed admitted.

given a letter stating that his employment with defendant was terminated for theft of company time, and for dishonesty.

Plaintiff's second amended complaint claims that defendant suspended and terminated him because of his race (Counts I and II), and in retaliation for reporting racial harassment (Counts III and IV).

## II.    Analysis

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### A.    Race Discrimination

The Court begins by examining plaintiff's race discrimination claims. A plaintiff can show race discrimination under Title VII through either the indirect or the direct method. Henry v. Jones, 507 F.3d 558, 564 (7th Cir. 2007). Plaintiff contends that he can meet his burden under both methods.

Under the indirect method, a plaintiff must establish a prima facie case of race

discrimination by presenting evidence that: (1) he is a member of a protected class; (2) he was meeting the defendant's legitimate expectations; (3) he was subjected to an adverse employment action; and (4) the defendant treated similarly situated employees outside the protected class more favorably.  Scaife v. Cook County, 446 F.3d 735, 739 (7th Cir. 2006).  If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse employment action.  Id.  If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's stated reason was a pretext for discrimination.  Id. at 739-40.

It is undisputed that plaintiff is a member of a protected class, and that his suspension and termination were materially adverse employment actions.  Defendant first argues that plaintiff fails to establish a prima facie case of race discrimination because he cannot show that his job performance was meeting defendant's legitimate expectations.  A genuine issue of material fact exists as to this part of the analysis, however, because plaintiff denies having stopped at Gene & Jude's on December 10, 2003.  See Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir. 1994) (noting that "a plaintiff may create an issue of fact by specifically refuting facts that allegedly support the employer's claim of performance deficiencies").

Defendant also argues that plaintiff cannot show that defendant treated similarly situated non-African American employees more favorably.  To meet this burden, plaintiff must show that another employee was "directly comparable to [him] in all material respects."  See Burks v. Wisc. Dep't of Transp., 464 F.3d 744, 751 (7th Cir. 2006).  Normally, this means identifying another employee who "dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would

distinguish [his] conduct or the employer's treatment of [him]." Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007).

Although plaintiff identifies eight individuals as comparators, none is a similarly situated employee outside the protected class. One of these individuals, identified only as "Debra," is, like plaintiff, African American, and accordingly is not outside the protected class. Three others – Mary Lafata, Bill Rogers, and Eva Liss – held managerial positions, and therefore did not deal with the same supervisor as plaintiff. See Goodwin v. Bd. of Trustees, 442 F.3d 611, 618 (7th Cir. 2006) (observing that a proposed comparator held a more senior position than the plaintiff, and thus did not deal with the same supervisor). Although plaintiff offers evidence that shuttle drivers Angel Reyes and Ken Sash were not disciplined for making unauthorized stops, he offers no evidence that any supervisor was aware of their misconduct.[5] Plaintiff states in his memorandum in response to defendant's motion for summary judgment that James Sciabica, like plaintiff, was supervised by Mary Lafata, but offers no support for this fact in his statement of additional facts. See Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("providing additional facts in one's responsive memorandum is insufficient to put those facts before the Court"). Moreover, although Sciabica also made an unauthorized stop, his circumstances differed materially from plaintiff's in that there is no evidence that Sciabica lied about his transgression. See Antonetti v. Abbott Labs., 563 F.3d 587, 592 & n.5 (7th Cir. 2009) (finding dishonesty about misconduct to be a distinguishing factor in determining whether employees were similarly situated).

---

[5] Plaintiff's argument that a reasonable jury could infer that supervisor Mary Lafata knew about Reyes' misconduct merely because Reyes and Lafata shared office space is purely speculative.

Indeed, the only proposed comparator plaintiff identifies who was accused of dishonesty was Philip Yaro, but Yaro's circumstances were materially different from plaintiff's. Yaro was a unionized service agent who was suspended, but not terminated, when he was found in possession of sunglasses which he claimed he had found in a car. Defendant's investigation of the incident revealed that the customers who had rented the car had not lost any sunglasses, and no customer claimed the glasses as missing or stolen; defendant ultimately was unable to determine where Yaro had obtained them. After consultation with Yaro's union, defendant gave Yaro a warning for dishonesty and ended the suspension. Unlike in Yaro's case, in plaintiff's case defendant obtained evidence that plaintiff had lied about his misconduct, including plaintiff's own admission.[6]

The Court concludes that plaintiff has failed to meet his burden of showing that defendant treated similarly situated non-African American employees more favorably. Therefore, plaintiff has failed to establish a prima facie case of discrimination under the indirect method.

The Court next turns to plaintiff's attempt to establish race discrimination under the direct method. Under the direct method, plaintiff must show, either through direct or circumstantial evidence, that defendant's decisions to suspend and terminate him were motivated by racial discrimination. See Jones v. City of Springfield, 554 F.3d 669, 671 (7th Cir. 2009). Circumstantial evidence may include "suspicious timing, ambiguous statements . . ., behavior toward or comments directed at other employees in the protected group, and other bits and pieces

---

[6] In addition, it does not appear that Yaro was directly supervised by plaintiff's supervisor, since the only evidence plaintiff offers indicates that Yaro was supervised by district manager Jeff Bruno. However, other evidence suggests that City Manager Bill Rogers, who made the decision to terminate plaintiff, had some input into the decisionmaking process regarding Yaro's employment.

from which an inference of discriminatory intent might be drawn." Rudin v. Lincoln Land Community College, 420 F.3d 712, 720-21 (7th Cir. 2005) (quoting Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994)). Circumstantial evidence also may include evidence that similarly situated employees outside the protected group were treated better, or that the employer's stated reason for the difference in treatment is unworthy of belief. See id. at 721. Plaintiff argues that circumstantial evidence of discrimination in this case includes evidence that defendant treated similarly situated employees differently, evidence that defendant's reasons for its actions against him were pretext for discrimination, and certain statements by Lafata.

The Court is not persuaded that plaintiff has met his burden under the direct method. As discussed above, plaintiff has not shown that defendant treated similarly situated non-African Americans more favorably. Nor has plaintiff shown that defendant's stated reasons for suspending and terminating him were pretextual. "Pretext is more than a mistake on the part of the employer; it is a phony excuse." Hudson v. Chicago Transit Authority, 375 F.3d 552, 561 (7th Cir. 2004). Although plaintiff notes discrepancies among the statements of the various Avis employees relating to his alleged unauthorized stop, and contends that he was intimidated into admitting having made the stop, these factors do not change the fact that defendant had ample reason to believe that plaintiff had made an unauthorized stop and lied when he was confronted about it. Defendant suspended plaintiff immediately after receiving information that he had made an unauthorized stop, and terminated him after plaintiff admitted to having done so.

Nor do Lafata's statements amount to circumstantial evidence of discrimination. Plaintiff points to the following statements by Lafata that he contends show her racial animus:

• In September 2003, when plaintiff came to work dressed in gold shorts and a red shirt,

Lafata told him, "you look like ketchup and mustard" and laughed, in front of a mostly Caucasian group;

• On October 7, 2003, following a dispute between plaintiff and Reyes, Lafata angrily told plaintiff, "I see what the problem is, you weren't listening," and swore at him;

• On October 24, 2003, after denying plaintiff's request to start his shift that day in the North Loop, Lafata told plaintiff, "if you had gotten in a vehicle from this location you would have been terminated";

• Following the altercation between plaintiff and Charles Bailey over the van seat, Lafata blamed plaintiff;

• In her deposition in this case, when asked for her reaction to a hypothetical situation in which an African-American employee directs a racial slur at another African-American employee, Lafata responded:

> It doesn't make sense because I know they used to do things like this, like the service agents and I would look like you've got to be kidding me. They didn't think that was upsetting. I commented to them: How can you talk to your son like that? What's the matter? I didn't say anything bad. The son didn't think anything was wrong with it either. I guess it depends on what you consider to be – . . . If somebody called me a name, it depends how they were saying it and vice versa. What's offensive to me might not be offensive to them. . . Because obviously it wasn't.

Plaintiff notes Lafata's use of the word "they" to refer to African Americans in her deposition testimony, and characterizes her testimony as expressing a belief that African Americans are more tolerant of racially harassing statements when compared with non-African Americans.

While Lafata's interactions with plaintiff may reveal hostility toward him, they do not show that that hostility had anything to do with plaintiff's race. In addition, while Lafata's deposition testimony is less than clear, it appears to express her belief that the context in which racial language is used can be relevant, rather than expressing a belief that African Americans generally are less sensitive to harassment. Indeed, immediately following that testimony, when

asked whether she would take a racial slur directed by an African American employee toward an another African American employee less seriously than one made by a white employee, Lafata testified: "I would take it seriously.  I would say why did you say that, what did you mean, to determine is that really something that is wrong and they both take it as wrong."  However, even if this testimony reflects a racist attitude on Lafata's part, as plaintiff contends, it is not linked to plaintiff's suspension and termination.  See Gorence v. Eagle Food Ctrs., Inc., 242 F.3d 759, 762 (7th Cir. 2001) (observing that "bigotry, per se, is not actionable," and that "there must be a real link between the bigotry and an adverse employment action").

The Court finds that plaintiff has not offered sufficient evidence to support a conclusion that he was suspended and terminated because he is African American.  Defendant's motion for summary judgment as to plaintiff's race discrimination claims is granted.

**B.     Retaliation**

The Court next examines plaintiff's retaliation claims, in which plaintiff alleges that defendant suspended and terminated him in retaliation for making his December 3, 2003 complaint to defendant's confidential employee complaint hotline.  Title VII prohibits employers from discriminating against employees who "opposed any practice" made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  As with his discrimination claim, plaintiff can establish a prima facie case of retaliation under the direct method or the indirect method.  See Argyropoulos v. City of Alton, 539 F.3d 724, 733 (7th Cir. 2008).

Under the direct method, plaintiff must show, through direct or circumstantial evidence: (1) that he engaged in statutorily protected activity, (2) that he suffered a materially adverse employment action, and (3) a causal link connecting the protected activity and the employment

action.  See Argyropoulos, 539 F.3d at 733.  Defendant first argues that plaintiff cannot show that he engaged in statutorily protected activity.  Defendant contends that plaintiff's December 3, 2003 complaint was merely a vague allegation that Lafata showed favoritism and was unprofessional, and argues that the complaint fails to identify any alleged conduct proscribed by Title VII.  While it is true that plaintiff did not specifically tell the complaint hotline representative that Bailey or Lafata was racially harassing him, he did characterize Bailey's language as a "profane racial comment," and quoted the racially charged language Bailey used.  The Court finds that a jury could reasonably infer that defendant would have understood from that language that plaintiff was complaining about racial harassment.  See Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1008 (7th Cir. 2000) (observing that a plaintiff need not use the word "discrimination" to be engaged in a statutorily protected activity, as long as he or she says something to indicate that discrimination is an issue).

Defendant also argues that plaintiff fails to establish a causal connection between his December 3, 2003 complaint and his suspension and termination.  "A causal link between the protected expression and an adverse action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision."  Culver v. Gorman & Co., 416 F.3d 540, 545 (7th Cir. 2005).  Suspicious timing alone is rarely sufficient to establish a genuine issue of material fact.  Tomanovich v. City of Indianapolis, 457 F.3d 656, 665 (7th Cir. 2006).

The Court agrees that plaintiff has failed to show a causal connection between his complaint and his suspension, because he has not established that Lafata and human resources representative Cheryl Reinwald were aware of his complaint at the time they suspended him.

Both Lafata and Reinwald testified that they were unaware of plaintiff's hotline complaint, and Reinwald testified that she was not asked to investigate plaintiff's complaint. Plaintiff disputes this evidence by offering the testimony of defendant's human resources manager, Eva Liss, who received plaintiff's complaint. Liss had no specific recollection about how she handled the complaint, and did not recall discussing it with Lafata. Liss testified that because she typically did not personally handle such complaints, "as a matter of practice" she "probably worked through Cheryl [Reinwald] to investigate the allegations," and that she "believe[d] that [she] must have" delegated it to Reinwald. Liss also testified that as part of an investigation, she would have expected Reinwald to speak with the parties named in the complaint, including Lafata. In further support of his position that Lafata was aware of his complaint at the time he was suspended on December 11, 2003, plaintiff offers evidence that Lafata made reference to the complaint on January 6, 2004.

The Court finds that Liss's speculative testimony is not sufficient to raise a question of fact as to Lafata and Reinwald's knowledge of plaintiff's complaint. Nor does evidence that Lafata was aware of plaintiff's complaint on January 6, 2004 show that Lafata was aware of the complaint at the time plaintiff was suspended. Since plaintiff cannot establish a causal link between his complaint and his suspension, the motion for summary judgment is granted as to plaintiff's retaliation claim in Count III. See Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004) (where the decisionmaker is unaware of an employee's complaint of discrimination, there can be no causal link between the complaint and the adverse action).

The Court next considers whether plaintiff has met his burden of showing a causal connection between his complaint and his termination, to withstand summary judgment as to

his retaliation claim in Count IV. Bill Rogers ultimately made the decision to terminate plaintiff, with input from Lafata, and perhaps from Reinwald. The Court notes that, in contrast to plaintiff's suspension, an issue of fact exists as to whether Lafata was aware of plaintiff's complaint as of the time of his termination on January 6, 2004. Although Lafata testified that she was unaware of the complaint at that time, plaintiff has offered evidence that on that date Lafata told him that his termination had nothing to do with his complaint filed against her.

Plaintiff points to four factors that he contends create a mosaic of circumstantial evidence of retaliation:

- On January 6, 2004, Lafata told plaintiff that his termination had nothing to do with the complaint;

- Contrary to its policies relating to harassment, defendant did not investigate plaintiff's harassment complaint or discipline Bailey;

- Lafata's deposition testimony quoted above; and

- The timing of plaintiff's suspension, which occurred eight days after he complained of harassment.

The Court is not persuaded that this evidence supports a conclusion that defendant's motive for terminating plaintiff was retaliatory, however. There is no reason to infer from Lafata's statement that the termination had nothing to do with plaintiff's complaint that the opposite was actually true. In addition, to the extent that Lafata had a dismissive attitude toward racial harassment and defendant failed to investigate plaintiff's complaint, such evidence may show a lack of seriousness about complaints of racial harassment, but does not show a retaliatory reaction. As for timing, this is not an "extreme case," where the adverse action occurred "on the heels" of protected activity. Cf. Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir.

2009). Moreover, plaintiff's timing argument is weakened by the fact that during the period between defendant's complaint and his suspension and termination, defendant received information that plaintiff had made an unauthorized stop and lied about it. The Court concludes that plaintiff has failed to meet his burden under the direct method.

Finally, the Court turns to the question of whether plaintiff has met his burden of showing that his termination was retaliatory under the indirect method. Under the indirect method, plaintiff must show that he engaged in a statutorily protected activity, that he met defendant's legitimate expectations, that he suffered a materially adverse action, and that similarly situated employees who did not engage in statutorily protected activity were treated more favorably. See Argyropoulos, 539 F.3d at 733. For the same reasons discussed in relation to plaintiff's discrimination claims, the Court finds that plaintiff has not identified any employee who was similarly situated to him. Defendant's motion for summary judgment is granted as to plaintiff's retaliation claim in Count IV.

**ORDERED:** Defendant's motion for summary judgment [66] is granted. Judgment in favor of defendant Avis Rent A Car Systems, LLC and against plaintiff Roy C. Baldon will be set forth on a separate document and entered in the civil docket. See Fed. R. Civ. P. 58(a), 79(a).

ENTER:

George W. Lindberg
Senior U.S. District Judge

DATED: August 17, 2010

15